part of the west half of lot No. 23, and bounded as follows : on the north by a line parallel with the north line of said half lot and so far south of said north line as to leave forty acres and no more, north of the first mentioned line on said lot; on the east, by a line dividing said lot No. 23, in the center from north to south ; on the south by lot No. 26, and on the west by the county road leading from Brooks to Thorndike.

Other deeds were introduced by both parties in which were the descriptive phrases : "to the county road" and "by the county road."

*W. H. Fogler*, for Webber.

*W. P. Harriman* and *N. H. Hubbard*, for Overlock *et al.*

### WEBBER *vs.* OVERLOCK *et al.*

DICKERSON, J. TRESPASS *quare clausum*. It appears from the evidence that the land of the plaintiff adjoins the land of the defendants on the south. The defendants' north line is thus identical with the plaintiff's south line. The defendants hold by the elder title. The determination of the defendants' north line, therefore, fixes the location of the plaintiff's south line.

All the deeds from the original proprietors under whom both parties claim title, through several mesne conveyances, bound the grantees on the west "by the county road ;" and the deed of the defendants' immediate grantor makes that road the western boundary of the land conveyed under it. The defendants' north line, as substantially described in the deeds they introduced, is a line drawn from a point in the line dividing lot 23 in the centre from north to south, extending westerly to the county road, and parallel with the north line of said lot, so as to leave forty acres in the west half of the same, north of it. It is obvious that the location of this line upon the face of the earth depends upon the construc-

tion that is to be put upon the words, "to" or" by the county road."
If the whole or half of the road is to be included in the quantity
of land remaining in the west half of the lot north of this line, it
would be farther north than it would, if the whole road or half of
it is to be excluded from the computation, and *vice versa.*

It is a familiar rule in the construction of deeds, that a deed
bounding the grantee by a highway conveys the fee to the centre
of the highway, when the title of the grantor extends so far.
*Palmer* v. *Dougherty,* 33 Maine, 502. *Hunt* v. *Rich,* 38 Maine,
195.

The original grantors under whom the parties claim, not only
owned the fee in the land covered by the highway, which is made
the western boundary of the several parcels conveyed by them, but
they also reserved an easement of any road legally laid over the
same for public use. The north line of the defendants' land,
therefore, is a line drawn from east to west on the west half of
lot No. 23, to the center of the highway, parallel with, and so far
south of the north line of said lot as to leave forty acres in said
west half of said lot north of it ; and the south line of the plain-
tiff's land is identical with that line. According to the plan of
Peter Moulton, the court surveyor, which is made a part of the
case, that line is indicated by the middle red [dotted] line, which
is one rod and twenty links south of the red [dotted] line, drawn
to indicate the defendants' north line, if it extended to the western
line of the road, and thus included the whole of the road in the
forty acre parcel.

The plaintiff testifies that the trespass was committed four feet
north of the last mentioned line ; and the defendant, Overlock,
testifies that he cut up to within two feet of the Hersey stake, so
called, which the plaintiff locates four feet north of the line run
by Moulton, to include the whole of the road in the reserve of
forty acres. There can be no doubt but the defendants committed
a trespass upon the land of the plaintiff by cutting and carrying
away, at least, a part of the grass sued for. How much they took,
north of their line, does not exactly appear. The plaintiff claims
to own the land to what is called, on Moulton's plan, "the division-
al line fence," and estimates the amount cut north of that line at

one ton, worth $12. We think $6 is a fair estimate of the value of the grass cut on the plaintiff's land.

The evidence does not sustain the plaintiff's claim of title by disseisin. *Judgment for plaintiff for six dollars.*

APPLETON, C. J., DICKERSON, VIRGIN, PETERS and LIBBEY, JJ., concurred.